**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) ) | No.  CV 21-274-TUC-CKJ |
| vs. | ) ) | CR 18-395-TUC-CKJ |
| Rogelio Salazar Gastelum, Jr., | ) ) | ORDER |
| Defendant/Movant. | ) ) | |

Pending before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (" Motion") (CV 21-274, Doc. 1; CR 18-395, Doc. 98)[1] filed by Movant Rogelio Salazar Gastelum, Jr. ("Gastelum").

I.  *Factual and Procedural Background*

On June 23, 2017, Tohono O'odham Nation police officers were called to the village of Chui Chu on the Tohono O'odham Nation.   Victim J.L. identified Gastelum, her boyfriend, as having stabbed her.  J.L. also stated she had contacted law enforcement earlier because Gastelum had locked her in a room and would not let her leave.  J.L. had injuries to her right arm and an officer saw an open puncture wound above her armpit and close to her shoulder that was bleeding profusely.  The victim was transported by helicopter to Chandler Regional Hospital in Chandler, Arizona.

---

[1]Unless otherwise stated, references to the docket are to the CV 21-274 docket.

The Tohono O'odham Nation Police Department arrested Gastelum for domestic violence assault, domestic violence aggravated assault, misuse of a weapon and/or a dangerous instrument (two charges), kidnapping, and disorderly conduct. Gastelum was convicted of the charges in the Tohono O'odham Nation Justice Center, Case No. CR2017-1171. He was sentenced to 360 days detention jail for domestic violence aggravated assault concurrent with the sentences in the other charges ranging from 60 days detention to 180 days detention.

On March 14, 2018, a four-count indictment was filed in this Court. The indictment charged Gastelum with Count 1: Assault Involving a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153; Count 2: Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6) and (b) and 1153; Count 3: Kidnapping, in violation of 18 U.S.C. §§ 1201 and 1153; and, Count 4: Assault on a Federal Officer, in violation of 18 U.S.C. §§ 111(a)(1) and 1152. The conduct alleged in the indictment is related to Tohono O'odham Nation Justice Center, Case No. CR2017-1171. An arrest warrant was issued on March 15, 2018. As Gastelum was in tribal custody, a *writ of habeas corpus ad prosequendum* was issued on April 17, 2018.

The tribal court case was discharged on May 8, 2018, and Gastelum was subsequently transferred into federal custody. On May 10, 2018, Gastelum appeared for intial appearance with appointed attorney, Jorge Leonardo Costales ("Costales"). On October 26, 2018, Costales' Motion to Withdraw as Counsel was granted; Stephen Thomas Portell ("Portell") was appointed as counsel for the Gastelum. On December 12, 2018, Portell filed a Motion to Withdraw as Attorney. The motion was granted, and Lance Woods ("Woods") was appointed as counsel. On February 27, 2019, Woods filed a Motion to Withdraw as Attorney. The motion was granted, and Saul Huerta, Jr. ("Huerta") was appointed as counsel for Gastelum.

On June 28, 2019, Huerta filed his third motion to continue trial and plea deadline.[2] The motion was granted and a pretrial status conference was scheduled. During the July 17, 2019, pretrial conference, Gastelum was "preparing to accept a plea agreement from the Government and . . . addressed the Court with a question re advisory counsel." July 17, 2019, Amended Minute Entry (Doc. 42). On July 22, 2019, Huerta filed his fourth motion to continue trial and plea deadline. The motion was granted and an attempted change of plea occurred on August 15, 2019. During this hearing, the magistrate judge and the parties discussed differences of opinion of defense attorneys and Gastelum regarding arguments to be presented to the Court.[3] After discussing a possible ineffective assistance of counsel claim, Gastelum accused Huerta of lying about prior conversations. The magistrate judge informed Gastelum that if Gastelum's plan was to enter a plea, but raise an ineffective assistance of counsel claim at a later time, a change of plea would not be entered during the hearing. August 15, 2019, Status Hearing Transcript ("8/15/19 TR") (Doc. 6-1, p. 31). Additionally, after Gastelum disputed whether he had acted intentionally during the offenses, the magistrate judge stated he would not be taking Gastelum's plea. (*Id.*).

A second change of plea hearing was conducted on August 29, 2019, wherein Gastelum pleaded guilty pursuant to a plea agreement to Count 1, Assault Involving a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3) and 1153. Gastelum was advised the maximum prison term for the offense was ten years, but the plea agreement included an agreement by the parties that the district judge impose a prison sentence between 15 and 71 months. The plea agreement further stated Gastelum would receive credit for the time served for the Tohono O'odham Nation's criminal court case.

The plea agreement also included the following:

[1]At the Aug 15, 2019 change of plea hearing, Defendant disclosed that he had two main claims that his four different defense attorneys refused to file: (1) that he had

[2]This was the eighth motion to continue trial and plea deadline filed in this case.

[3]For example, Gastelum asserted he was being treated differently because he was subject to dual sovereignty.

- 3 -

"just cause" *vis a vis* the elements for 18 USC 113(a)(3) aggravated assault with a dangerous weapon; and (2) that there was a jurisdictional impediment based upon a perceived incompatibility between USCs 1153 & 113.  The government, and apparently all of his attorneys found no merit in those claims, as restated by the defendant's current counsel at the hearing.  Section 1153 is merely an enabling provision that brings 113 jurisdiction into Indian Country.  And non-lethal provocations or excuses are not a *legal* defense to deadly force – the kind wielded by the defendant in the instant case.

Following last week's hearing, it would appear that the defendant now appreciates the interconnection between 1153/113. The government also now recognizes why the defendant wishes to explain the reasons for stabbing the victim.  In this spirit, it is in all parties' interests to resolve this case and toward that end, the government offers an additional 5k2.0 departure, for two reasons.  One, so as to grant the defendant consideration for claims he believes should be given some weight in tabulating his final sentence.  And two, to embark upon the important steps of closure and rehabilitation - for the defendant, the community, and the victim - without further litigation.  The government and Defendant enter into this renegotiated plea and its additional reductions with the exchange of these careful considerations in mind.

Plea Agreement, (CR 18-395, Doc. 52 pp. 2-3, n. 1.).   Additionally, the plea agreement stated:

Provided the defendant receives a sentence of imprisonment no greater than the limits, above, the defendant waives any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the information or indictment, or to the petition to revoke, or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant providing the sentence is consistent with this agreement. The sentence is in accordance with this agreement if the sentence imposed is within the stipulated range. The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under 18 U.S.C. § 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack defendant's conviction and sentence under 28 U.S.C. § 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his/her conviction or sentence in this case. If the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar a claim by the defendant of ineffective assistance of counsel or of "prosecutorial misconduct" as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015).

Plea Agreement, (CR 18-395, Doc. 52 pp. 5-6).

On November 16, 2020, this matter proceeded to sentencing.  At that time, when asked if he was satisfied with the services of this attorney (Huerta), Gastelum stated, "I am now, yeah. In the beginning I wasn't, but now I am."  Nov. 16, 2020, Sentencing Transcript

("11/16/20 TR") (Doc. 6-3, p. 4).  Gastelum further stated Huerta had been able to answer Gastelum's questions and went over the PSR with him.  (*Id*.).  The Court found a total offense level of 20 and a Criminal History Category of V for a range under the Advisory Sentencing Guidelines of 63-78 months in custody.  Additionally, the Court granted an 11 month downward departure pursuant to 5K2.23 based on the amount of time Gastelum spent in tribal custody for the same offense and, referring to the uncooperative victim, savings of resources, and the evidentiary difficulties if the matter were to proceed to trial, the Court granted  a two-level departure under 5K2.0.  The Court concluded the advisory guideline range was 40-52 months in custody.  The Court sentenced Gastelum to a 52 month term of imprisonment to be followed by a 36 month term of supervised release.

On July 12, 2021, Gastelum filed the pending Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.  The government has filed a response, and Gastelum has filed a reply.

## II.  *28 U.S.C. § 2255*

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may move a sentencing court to vacate, set aside, or correct his or her sentence on the grounds that (i) the sentence violates the U.S. Constitution or other federal law; (ii) the court lacked jurisdiction to impose the sentence; (iii) the sentence exceeds the maximum authorized by law; or (iv) the sentence is otherwise subject to collateral attack.  Here, Gastelum asserts (1) his attorney was ineffective as being unknowledgeable in Indian Law, (2) prosecutorial misconduct, (3) a violation of equal protection of the laws, and; (4) a violation of double jeopardy based on a lack of jurisdiction.

Where a claim involves alleged occurrences outside the record, a hearing is not required if the allegations "viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'"  *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir.1985), *quoting United States v. Schaflander*, 743

F.2d 714, 717 (9th Cir.1984); *Smith v. United States*, 884 F.2d 582 (9th Cir. 1989) (hearing not required for 2255 claims of ineffective assistance of counsel and prosecutorial misconduct where the motion, files and records of the case conclusively show a prisoner is entitled to no relief). Where the allegations of a movant contradict statements made in court, credibility must be assessed. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). An evidentiary hearing is not required where the issue of credibility may be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.1988).[4]  Also, courts may expand the record with other documentary evidence, use their own notes and recollections, and use common sense. *Shah*, 878 F.2d at 1159; *see also United States v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988). The Court, therefore, will properly consider the complete record of what occurred in the criminal case.  Because the files and records conclusively show Gastelum is not entitled to relief, the Court finds an evidentiary hearing is not required.

III.  *Waiver of Right to File 28 U.S.C. § 2255 Petition*

A waiver generally will be enforced if the agreement, by its terms, expressly waives the right and the waiver is knowingly and voluntarily made.  *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (A waiver is enforceable if "the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised" and "the waiver is knowingly and voluntarily made."), *internal quotation marks omitted*; *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Vences*, 169 F.3d 611 (9th Cir. 1999)(sentence was not illegal where it was authorized by the judgment of conviction and was not in excess of the statutory penalty).  In this case, the plea agreement provided that if Gastelum received a sentence in accordance with the plea agreement, Gastelum waived any right to appeal the Court's entry of judgment or sentence

---

[4]However, a hearing may be required "in spite of 'the barrier of the plea or sentencing procedure record [which], although imposing, is not invariably insurmountable.'" *Shah*, 878 F.2d at 1158, *quoting Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

1   and waived any right to collaterally attack under 28 U.S.C. § 2255 or any other collateral

2   attack to his conviction and sentence.   Gastelum's sentence is consistent with the plea

3   agreement.

4        However, the plea agreement further provides the waiver is not to be construed to bar

5   claims of ineffective assistance of counsel or of prosecutorial misconduct.  *See*, *United States*

6   *v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022) (where defendant alleges ineffective

7   assistance of counsel while entering plea agreement, the claim may attack the knowing and

8   voluntary nature of the plea agreement).  The Court finds Gastelum has not waived his claims

9   of ineffective assistance of counsel or of prosecutorial misconduct and the Court will

10   consider these claims.

11        As to Gastelum's claims of a violation of equal protection of the laws and a violation

12   of double jeopardy based on a lack of jurisdiction, the Court finds Gastelum's guilty plea

13   cured any constitutional defects.  *See e.g. United States v. Lopez-Armenta*, 400 F.3d 1173, 1175

14   (9th Cir. 2005) ("[I]t is well-settled that an unconditional guilty plea constitutes a waiver of the right

15   to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects.").

16   Additionally, the record indicates multiple plea agreements were considered before Gastelum

17   approved of the plea agreement entered in this case.  Further, Gastelum's statements at both

18   the August 15, 2019, and August 29, 2019, hearings demonstrates Gastelum fully understood

19   and agreed with the terms of the plea agreement, as well as the elements of the offense, the

20   rights he was giving up, and the penalties he faced by entering a guilty plea.  The Court finds

21   Gastelum has waived raising equal protection and double jeopardy (jurisdiction) claims in

22   this case.

23

24   IV.  *Ineffective Assistance of Counsel*

25        Ineffective assistance of counsel constitutes a violation of the Sixth Amendment right

26   to counsel, and thus, if established, is grounds for relief under § 2255.  *See e.g. United States*

27   *v. Houtchens*, 926 F.2d 823, 828 (9th Cir. 1991) (section 2255 motion is the customary

28

procedure for challenging the effectiveness of counsel under the Sixth Amendment).  Further, a "'decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside the range of competence[.]'"  *United States v. Ruiz*, 241 F.3d 1157, 1165 (9th Cir. 2001), *reversed on other grounds, quoting DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000).

To prevail on a claim of ineffective assistance of counsel, Gastelum must satisfy a two prong test, demonstrating:  (1) deficient performance, such that counsel's actions were outside the wide range of professionally competent assistance, and (2) Gastelum was prejudiced by reason of counsel's actions.  *Strickland v. Washington*, 466 U.S. 668, 686-90 (1984).  Additionally, a defendant's Sixth Amendment right to counsel "extends to the plea bargaining process." *Lafler v. Cooper*, 566 U.S. 156 , 162 (2012).  "A claim of ineffective assistance used to attack the validity of a guilty plea may be sustained where the petitioner establishes that the ineffective performance 'affected the outcome of the plea process . . . [such] that absent the erroneous advice, [he] would have insisted on going to trial.'"  *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996), *quoting Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The government argues:

> . . . [S]uch an ineffectiveness claim is limited to counsel's performance affecting the voluntariness of the guilty plea or waiver. This would exclude the defendant's sole claim that his most recent attorney was not knowledgeable in Indian law as it does not directly relate to the counsel's performance as specified supra. (Dkt. No. 98 at p. 13-19.) The petitioner has not shown that his counsel, Mr. Saul Huerta, provided deficient advice regarding the guilty plea based on his alleged lack of knowledge, that rendered his plea involuntary. The record, rather, demonstrates that the petitioner was satisfied with his attorney's advice and that he pleaded guilty knowingly and voluntarily after fully reviewing the plea agreement.[3]
>
> [3]See summary of plea colloquy, *supra*, at page 7.

Response (Doc. 6, pp. 9-10).  The Court disagrees with the government's argument that defense attorney conduct not related to plea proceedings has been waived.  Whether defense counsel provided competent advice regarding the plea proceedings necessarily hinges on whether he competently provided advice regarding the merits of arguments regarding Indian

law.  Indeed, where a defendant argues the ineffective assistance led him to accept a plea bargain, a different result means that "'but for counsel's errors, [defendant] would either have gone to trial or received a better plea bargain.'"  *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015), *quoting United States v. Howard*, 381 F.3d 873, 882 (9th Cir. 2004).

Additionally, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.  As to Gastelum's claim that counsel did not provide effective assistance based on his lack of knowledge of Indian law, Gastelum has not asserted that "absent the erroneous advice, [he] would have insisted on going to trial.'"  *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996), *quoting Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Stated differently, Gastelum must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  Here, the record makes clear that Gastelum was aware his arguments were disputed, yet chose to proceed with the plea agreement.  Moreover, a reasonable probability that Gastelum would have received a different outcome in the case or that the guilty plea was a fundamentally unfair result if defense counsel had been more knowledgeable on Indian law has not been shown.  Rather, defense counsel negotiated a plea agreement that resulted in the dismissal of three charges and a downward adjustment for Gastelum accepting responsibility.  Additionally, had the matter proceeded to trial, evidence that Gastelum had provided a statement admitting his involvement in the offense and had pleaded guilty to the same offense in tribal court would presumably have been presented, making it likely Gastelum would have been found guilty of the assault charge despite counsel's alleged deficiency.  The Court finds Gastelum has not been prejudiced by any alleged deficiency of defense counsel.

Moreover, the Court finds defense counsel's actions were within the wide range of professionally competent assistance.  It appears Gastelum is speculating as to defense

counsel's knowledge regarding Indian law based on Gastelum's position on the interplay between 18 U.S.C. §1153 and 18 U.S.C. §113.  *See* 8/15/2023 TR (Doc. 6-1, p. 34-35) (discussion of Gastelum's claim). As discussed at the August 15, 2019, hearing, Gastelum recognized that none of his attorneys had believed the argument had merit.  *See* 8/15/2023 TR (Doc. 6-1, pp. 17).  In other words, multiple defense attorneys determined Gastelum's claim did not have merit.   Additionally, the Court recognizes:

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it.  Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law.  Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution . . . or by contesting all guilt . . .

*Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973), *citations omitted*.  In such circumstances, it cannot be said defense counsel's knowledge was outside the wide range of professionally competent assistance.

Moreover, Gastelum's claim is based on his interpretation he is being unfairly subjected to a dual sovereignty law.   However, although Gastelum argues the dual sovereignty doctrine does not apply in this case based on an interpretation of the federal enclave clause, U.S. Const. art. I, § 8, cl. 17, the Indian commerce clause, U.S. Const. art. I, § 8, cl. 3, and the intention of Congress, he  has failed to provide any controlling or persuasive authority to support this position.  Rather, courts have consistently found such prosecutions are permissible.  *See e.g.*, *United States v. Antelope*, 430 U.S. 641, 645-46 (1977) (criminal statutes did not violate the equal protection requirements because distinctions based upon tribal affiliation were not invidious race-based distinctions; the distinctions were based upon "'the quasi-sovereign status of [Indian tribes] under federal law.'"), *citations omitted*; *Denezpi v. United States*, 142 S. Ct. 1838 (2022); *United States v. Wheeler*, 435 U.S. 313 (1978) (federal charges against a member of the Navajo tribe, even though the member had previously been convicted in a Navajo tribal court on a lesser included offense, was permissible); *United States v. Scott*, No. CR 19-29-GF-BMM, 2020

1   WL 2126694(D. Mont. May 4, 2020) *United States v. Smith*, No. CR 13-08043-PCT-GMS,

2   2017 WL 9605121 (D. Ariz. Aug. 16, 2017), report and recommendation adopted, No. CR

3   13-08043-PCT-GMS, 2018 WL 1181085 (D. Ariz. Mar. 7, 2018).

4        For example, when the Ninth Circuit determined a defendant "could not be tried in

5   federal district court for the same offense that he was previously convicted of in Navajo tribal

6   court without violating the Double Jeopardy Clause of the Fifth Amendment[,]" *United*

7   *States v. Wheeler*, 545 F.2d 1255, 1258 (9th Cir. 1976), *rev'd*, 435 U.S. 313 (1978), the

8   Supreme Court reversed that decision.  Although Gastelum argues the Supreme Court does

9   not decide the issue in *Wheeler*, 435 U.S. at 315, n. 22 ("We need not decide whether this

10  carefully limited intrusion of federal power into the otherwise exclusive jurisdiction of the

11  Indian tribes to punish Indians for crimes committed on Indian land, deprives a tribal court

12  of jurisdiction over the enumerated offenses, since the crimes to which the respondent

13  pleaded guilty in the Navajo Tribal Court are not among those enumerated in the Major

14  Crimes Act."), *citations and internal quotations omitted*, the Supreme Court has also stated:

15       Denezpi's single act transgressed two laws:  the Ute Mountain Ute Code's assault and
16       battery ordinance and the United States Code's proscription of aggravated sexual
         abuse in Indian country.  The Ute Mountain Ute Tribe, like the Navajo Tribe in
17       Wheeler, exercised its "unique" sovereign authority in adopting the tribal ordinance.
         Likewise, Congress exercised the United States' sovereign power in enacting the
18       federal criminal statute.  The two laws, defined by separate sovereigns, therefore
         proscribe separate offenses.  Because Denezpi's second prosecution did not place him
19       in jeopardy again "for the same offence," that prosecution did not violate the Double
         Jeopardy Clause.

20  *Denezpi v. United States*, 596 U.S. 591, 598–99 (2022), *citation omitted*.  Gastelum's

21  offenses in the tribal court and the offenses in federal court are separate offenses defined by

22  separate sovereigns; as such, the prosecution was permissible.

23       Indeed, 18 U.S.C. § 113 sets forth a crime of assault that occurs within "the special

24  maritime and territorial jurisdiction of the United States[.]" 18 U.S.C. § 113(a).  18 U.S.C.

25  § 1153 specifies that felony assaults under § 113 (as well as other offenses) committed by

26  "[a]ny Indian . . . within the Indian country, shall be subject to the same law and penalties as

27  all other persons committing any of the above offenses, within the exclusive jurisdiction of

28

the United States." 18 U.S.C. § 1153(a).  In other words, § 1153 clarifies § 113 applies to Indian country.

Additionally, included within his claim of prosecutorial misconduct, Gastelum asserts defense counsel was deficient in failing to seek reconsideration of the denial of pretrial release.  However, as Gastelum has not shown that, had counsel filed a motion for reconsideration, Gastelum "would either have gone to trial or received a better plea bargain." *Rodriguez-Vega*, 797 F.3d at 788.  In other words, Gastelum has not shown he was prejudiced by this alleged deficiency.  Moreover, because of Gastelum's risk of nonappearance based on his record of failures to appear, use of aliases, unemployment, substance abuse history, mental health history, non-compliance while on supervision as well as various infractions noted with the Arizona Department of Corrections, criminal activity while under supervision, and risk of danger to the community, *see* Pretrial Services Report (CR 18-395, Doc. 10), "hardly any defense lawyer would have thought [Gastelum] had a realistic chance at release before trial."  *United States v. Dusty Whitehouse*, No. CR 15-147-BLG-SPW, 2021 WL 270673, at *10 (D. Mont. Jan. 27, 2021).

The Court finds defense counsel did not provide deficient assistance to Gastelum.

V.  *Prosecutorial Misconduct*

A federal habeas claim of prosecutorial misconduct is reviewed under "the narrow [standard] of due process, and not the broad exercise of supervisory power."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), *quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  A prosecutor's actions constitute misconduct if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181, *quoting Donnelly*, 416 U.S. at 643.  To constitute a due process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"  *United States v. Bagley*, 473 U.S. 667, 676 (1985), *quoting United States v. Agurs*, 427 U.S. 97, 108 (1976).  Further, "[a] guilty plea may be set aside

1  as involuntary if the defendant can establish prejudice from prosecutorial misconduct."

2  Guilty Pleas, 35 Geo. L.J. Ann. Rev. Crim. Proc. 381, 394 (2006), *citation omitted*.

3      However, as stated by the government:

4      [O]bjections to pretrial procedures are rendered moot by a defendant's guilty plea as
        the parties lack a legally cognizable interest in the outcome, therefore arguments
5       regarding pretrial detention hearings are found to be meritless.

6  Response (Doc. 6, p. 15), *citing United States v. Horton*, 107 F.3d 868, * 5 (4th Cir. 1997);

7  *United States v. O'Shaughnessy*, 772 F.2d 112, 113 (5th Cir. 1985).  Indeed, "a § 2255

8  petitioner 'must demonstrate the existence of an error . . . which had a substantial and

9  injurious effect or influence on the guilty plea . . .'"  *Harris v. United States*, No.

10  120CV01215JDBJAY, 2023 WL 5333894, at *13 (W.D. Tenn. Aug. 18, 2023), *quoting

11  Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *see also Killen v. United States*,

12  No. 21-10888-E, 2021 WL 7159181, at *6 (11th Cir. Sept. 8, 2021) ("Because these claims

13  concern only the conditions of Mr. Killen's pretrial detention and not the validity of his

14  convictions or sentences, they are not cognizable in a § 2255 motion."), *cert. denied*, 142 S.

15  Ct. 1168 (2022); *United States v. Groenendal*, No. 1:11-CR-260, 2020 WL 3046010, at *29

16  (W.D. Mich. June 8, 2020) ("[A]ny violation of Defendant's rights with respect to his pretrial

17  detention is irrelevant in this [§ 2255] matter. . . . [E]ven a successful challenge to the legality

18  of his pretrial detention would not entitle Defendant to [§ 2255] relief.).

19      In this case, Gastelum argues prosecutorial misconduct occurred when the prosecutor

20  "denied [Gastelum's] motion" for pretrial release.  Petition (Doc. 1, p. 19).  In other words,

21  it appears the government did not agree or stipulate to Gastelum's request for pretrial release.

22  Not only is this within the government's discretion, but this only relates to Gastelum's pretrial

23  detention and not the validity of his conviction or sentence.  As such, the Court finds a

24  federal habeas claim of prosecutorial misconduct has not been shown.

25  . . . . .

26  . . . . .

27

28

- 13 -

1   VI.  *Conclusion*

2          As to Gastelum's claims of a violation of equal protection of the laws and a violation

3   double jeopardy based on a lack of jurisdiction, the Court finds Gastelum waived these

4   claims pursuant to the terms of the plea agreement; further Gastelum's guilty plea cured any

5   constitutional defects.

6          Additionally, Gastelum has not adequately alleged counsel's purported ineffective

7   "'performance affected the outcome of the plea process . . . [such] that absent the erroneous

8   advice, [he] would have insisted on going to trial.'"  *Baramdyka*, 95 F.3d at 844, *citation*

9   *omitted*; *see also Hill*, 474 U.S. at 58; *Doganiere v. United States*, 914 F.2d 165, 168 (9th

10  Cir.1990).  Gastelum has not shown he was prejudiced by counsel's alleged deficiencies.

11  Further, Gastelum has not shown prosecutorial misconduct warrants habeas relief.

12

13  VII.  *Certificate of Appealability ("COA")*

14          Rule 11(a), Rules Governing Section 2255 Proceedings, requires that in habeas cases

15  the "district court must issue or deny a certificate of appealability when it enters a final order

16  adverse to the applicant." Such certificates are required in cases concerning detention arising

17  "out of process issued by a State court[,]" or in a proceeding under 28 U.S.C. § 2255

18  attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Motion

19  is brought pursuant to 28 U.S.C. § 2255.  This Court must determine, therefore, if a COA

20  shall issue.

21          The standard for issuing a COA is whether the applicant has "made a substantial

22  showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district

23  court has rejected the constitutional claims on the merits, the showing required to satisfy §

24  2253(c) is straightforward:  The movant must demonstrate that reasonable jurists would find

25  the district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

26  *McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on

27  procedural grounds without reaching the prisoner's underlying constitutional claim, a COA

28

should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Court finds that jurists of reason would not find it debatable whether the Motion stated a valid claim of the denial of a constitutional right. Further, the Court finds that jurists of reason would not find it debatable whether the district court was correct in its procedural rulings. A COA shall not issue as to Gastelum's claims.

Any further request for a COA must be addressed to the Court of Appeals. *See* Fed. R.App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, IT IS ORDERED:

1. The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (CV 21-274, Doc. 1; CR 18-395, Doc. 98) is DENIED.

2. Cause No. CV 21-274 is DISMISSED.

3. The Clerk of the Court shall enter judgment and shall then close its file in Cause No. CV 21-274.

4. A Certificate of Appealability shall not issue in this case.

DATED this 20th day of December, 2023.

Cindy K. Jorgenson
United States District Judge